AO 91 (REV.5/85) Criminal Complaint                                    AUSA Michael T. Donovan (312) 886 - 2035

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

UNITED STATES OF AMERICA                    **Under Seal**

v.                                          CRIMINAL COMPLAINT

DWAYNE WILLIAMS                             CASE NUMBER:

**MAGISTRATE JUDGE COLE**

**08 CR 530**

I, the undersigned complainant being duly sworn, state the following is true and correct to the best of my knowledge and belief. On or about May 9, 2008, in Cook County, in the Northern District of Illinois, Eastern Division, defendant did,

> knowingly and intentionally distribute a controlled substance, namely mixtures and substances containing cocaine, a Schedule II Narcotic Drug Controlled Substance,

in violation of Title 21, United States Code, Section 841(a)(1).

I further state that I am a Special Agent with the U.S. Drug Enforcement Administration, and that this complaint is based on the following facts:

See Attached Affidavit

**FILED**
7-8-08
JUL - 8 2008

**MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT**

Continued on the attached sheet and made a part hereof:  _X_ Yes _ No

_SA C. Kuriata_
Signature of Complainant

Sworn to before me and subscribed in my presence,

July 8 , 2008 _____  at          Chicago, Illinois _____
Date                                        City and State

Jeffrey Cole, U.S. Magistrate Judge_____
Name & Title of Judicial Officer            Signature of Judicial Officer

STATE OF ILLINOIS )
)
COUNTY OF COOK )

## AFFIDAVIT IN SUPPORT OF COMPLAINT

I, CONNIE KURIATA, being duly sworn, state as follows:

## I.    INTRODUCTION

1.    I have been employed as a Special Agent within the Department of Justice, Drug Enforcement Administration ("DEA") since November 2003. I am currently assigned to the DEA/High Intensity Drug Trafficking Area ("HIDTA") Task Force in Chicago, Illinois.

2.    My official DEA duties include investigating criminal violations of the federal narcotics laws, including, but not limited to, Title 21, United States Code, Sections 841, 843, and 846, and federal firearms violations including but not limited to, Title 18, United States Code Sections 922(g) and 924(c). I have received special training in the enforcement of laws concerning controlled substances as found in Title 21 of the United States Code. Some of the specialized training I have received includes, but is not limited to, classroom instruction concerning narcotics smuggling, money laundering investigations, and conspiracy and complex investigations. I have been involved in various types of electronic surveillance, including the interception of wire communications; and the debriefing of defendants, witnesses and informants, as well as others who have knowledge of the distribution and transportation of controlled substances, the laundering and concealing of proceeds from drug trafficking and the organizations, the structure and methods of narcotics trafficking organizations, and street gangs who participate in these illegal activities. As a result of these investigative activities, I have conducted and participated in numerous investigations that have resulted in the seizure of hundreds of pounds of marijuana, as well as multiple kilograms of cocaine and heroin.

3.    I submit this affidavit in support of a criminal complaint charging Dwayne Williams with distribution of a controlled substance, namely cocaine, in violation of Title 21, United States Code, Section 841(a)(1).

4.    The facts set forth in this affidavit are known to me as a result of my personal participation in this investigation and from reports made to me by other law enforcement agents, from records, documents, and other evidence obtained as a result of this investigation, and from individuals associated with and who have knowledge about the affairs of the subject individuals in this investigation and their confederates.

5.    Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a complaint, I have not included each and every fact known to me and other law enforcement agents concerning this investigation. Rather, I have set forth only the

1

facts that I believe are necessary to establish probable cause in support of the complaint.

## II.    PROBABLE CAUSE

### A.    CS4.

6.      In April 2008, a confidential source, (hereinafter "CS4"), began cooperating with DEA. CS4 has provided useful and reliable information as part of this investigation, including assisting DEA in two controlled purchases of cocaine from Williams, and providing information regarding the narcotics activities of persons on the west side of Chicago.

7.      A significant portion of the information provided by CS4 has been corroborated by physical surveillance, consensually recorded telephone calls and meetings with Williams and other individuals, as well as other investigative techniques.

8.      CS4 was a source of supply for cocaine/crack cocaine to other individuals who were directly involved in the drug distribution of narcotics. CS4 is cooperating with the hope that he/she would obtain a benefit relating to narcotics charges or a sentencing recommendation that will be filed against him/her in the future.  According to a Chicago Police Department criminal history report, CS4 has one conviction for assault in 2002 and 5 other arrests between 1995 and 2007.

9.      CS4 has advised agents that Williams supplied cocaine/crack cocaine to CS4 and other individuals, including members of gangs. CS4 stated that CS4 regularly purchased cocaine from Williams approximately twice per month during 2007 and early 2008.

### B.    Controlled Purchases of Cocaine from Dwayne Williams.

10.     In approximately April 2008, CS4 arranged with Williams to purchase approximately four and a half ounces of cocaine from Williams, which was delivered by an unknown male, in front of the residence 4409 West Washington in Chicago.  In May 2008, CS4 purchased approximately four and a half ounces of cocaine from Williams inside the residence at 4409 West Washington in Chicago.

#### 1.    April 23, 2008 Controlled Purchase of Cocaine from Williams.

11.     On April 23, 2008, at approximately 1:25 p.m., during a consensually recorded call between CS4 and Williams,[1] Williams asked "What price you want for that tire[cocaine],

---

[1] With respect to each consensually recorded telephone call described in this affidavit, agents confirmed the telephone number dialed by physically dialing CS4's phone directly, or observing the number dialed by CS4.  Agent interpretation of recorded conversations will be included in brackets.  The interpretation is based on information provided by CS4, the context of

what price you wanna spend on that tire . . .I'm a see what my buddy can do for you right quick, cause he got a set of tires[supply of cocaine]?" CS4 replied, "No more than three" [meaning three thousand dollars].[2] CS4 advised agents that the person on the phone was Williams and agents confirmed that Dwayne Williams met with CS4 during both of the controlled purchases referenced in this affidavit.

12.     At approximately 3:39 p.m. on April 23, during a consensually recorded call with CS4, Williams said, "I ain't gonna have nothing[no cocaine] till probably Friday, I'm down for a minute [a short time] and he say he got a few little tires[cocaine]." At approximately 3:52 p.m., during a consensually recorded call, Williams advised CS4 to "come on out, my partner's here, he'll be here in like five or ten minutes." CS4 responded "it'll take about twenty, thirty minutes to get out there." CS4 stated that Williams meant that he was ready to sell CS4 cocaine.

13.     On April 23, 2008, agents met CS4 at a pre-determined meet location. Agents provided CS4 with $3,000 of U.S. currency, and equipped CS4 with a recording device to record the meeting with Williams. CS4 and his/her vehicle were searched for guns, drugs, and money before he/she entered into the vehicle. CS4 had no contraband on his/her person or in his/her vehicle. While at this location, CS4 received an incoming call from Williams, which was recorded, advising CS4 to travel to at 4409 W. Washington, Chicago, Illinois to conduct the narcotics transaction. CS4 inquired "Where I'm coming to?" Williams replied, "At my shop[4409 West Washington] right."

14.     Agents established surveillance ("surveillance") at 4409 West Washington, Chicago, Illinois. Based on surveillance, at approximately 3:45 p.m. on April 23, 2008, surveillance observed Williams standing outside of the residence at 4409 West Washington Street, while engaging in a conversation with an unknown male, FNU LNU 1. When observing Williams's face while Williams was outside 4409 West Washington, surveillance agents were able to identify Williams by comparing his face to an arrest photograph of Williams.

15.     At approximately 3:47 p.m., surveillance observed a second unknown male, FNU LNU 2, arrive in an older model yellow vehicle. FNU LNU 2 parked at approximately 4409 W. Washington, and exited the vehicle. Surveillance observed FNU LNU 2 join Williams and FNU LNU 1 in front of 4409 West Washington.

16.     At approximately 4:06 p.m., surveillance observed Williams enter the yard of 4409 West Washington, while FNU LNU 1 and FNU LNU 2 departed the area in separate vehicles. At approximately 4:20 p.m., surveillance observed a silver Pontiac Grand Am arrive and park at approximately 4411 W. Washington. FNU LNU 2 exited the vehicle and approached

---

the conversation, the controlled purchases, other evidence gathered during this investigation, and my experience and the experience of other agents working on this investigation.

[2] CS4 advised agents that CS4 and Williams used the word "tire" to refer to cocaine.

4409 West Washington, met Williams, and they stood and engaged in conversation.

17.    At approximately 4:26 p.m., surveillance observed CS4 arrive in his/her vehicle, park on the street, then approach Williams and FNU LNU 2.  Surveillance observed Williams, CS4, and FNU LNU 2 stand in front of 4409 West Washington, and appear to have a brief conversation.  Based on a debriefing of CS4 following the purchase of cocaine from Williams and the unknown male, CS4 related he/she traveled to 4409 West Washington and pulled up in front of the house.  CS4 stated that he/she got out of his/her vehicle and approached Williams, who was standing in the front of 4409 West Washington with an unknown male, FNU LNU 2.  CS4 stated that Williams introduced CS4 to FNU LNU 2 and referred to him as "DRE" or "JAY."  CS4 stated that he/she asked Williams and FNU LNU 2 "where we gonna do it"[meaning the narcotics transaction].  Williams responded, "Right there in the car."

18.    Surveillance observed CS4 and FNU LNU 2 enter the silver Pontiac Grand Am.  According to CS4, as CS4 entered the vehicle, he/she was able to view the cocaine in the front middle console.  CS4 stated that he/she handed FNU LNU 2 the $3,000, FNU LNU 2 counted the money, grabbed the plastic bag containing the cocaine from the console, and handed it to CS4.  CS4 related while he/she gave the unknown male the $3,000, he/she inquired if the cocaine was $2,900.  The FNU LNU 2 replied "no, $3,000", and CS4 replied it was a good thing that he/she had $3,000.  After a few minutes while CS4 and FNU LNU 2 were in the car, surveillance observed CS4 and FNU LNU 2 get out of the Grand Am, and CS4 re-enter his/her vehicle and depart the area.  FNU LNU 2 approached 4409 West Washington, walked on to the porch and met with Williams.  CS4 related he/she exited the unknown male's car and briefly spoke with Williams.  According to CS4, CS4 and Williams discussed the quality of the cocaine which CS4 had just purchased.  CS4 then departed the area in CS4's vehicle.

19.    Surveillance agents maintained constant surveillance of CS4 until they met with CS4 at another location a few minutes later.  CS4 met with DEA agents and relinquished a clear plastic bag containing a white substance, suspected cocaine.  A laboratory test of the substance indicated the presence of cocaine hydrochloride, and a net weight of approximately 124 grams.  CS4 and his/her vehicle was searched again for guns, drugs, and money.  CS4 had no contraband on his/her person or in his/her vehicle.

**2.    May 9, 2008, Controlled Purchase of Cocaine from Williams.**

20.    On May 9, 2008, during a consensually recorded call at approximately 11:47a.m., CS4 stated to Williams, "Shit trying to go to uh, a small tire [cocaine], the same tire [4.5 ounces of cocaine] I got last time [the April 23 controlled purchase] ."  Williams said, "Okay let me call the boy cause I told him yesterday, he laid it [4.5 ounces of cocaine] to the side for you, I'm a call the boy up."  In a consensually recorded call a short time later on May 9, Williams stated, "He coming, he coming my way now, he say he on 71st, he out south, he coming . . . he say he should be out here about fifteen minutes."  CS4 replied, "Okay, let me know where you want me to come to."  Williams responded, "I'll tell you, probably the same place [4409 West Washington]

over there, I'm a be sitting over there, once he call me, cause I'm gonna go that way in a few minutes."

21.     On May 9, 2008, agents met with CS4 at a pre-determined meet location.  Agents provided CS4 with $3,000 of U.S. currency, and equipped CS4 with a recording device to record the meeting with Williams.  CS4 and his/her vehicle were searched for guns, drugs, and money before he/she entered into the vehicle.  CS4 had no contraband on his/her person or in his/her vehicle. While at this location, at approximately 1:10 p.m., CS4 received an incoming call, which was recorded, in which Williams said, "Yo, waiting on you over here, in the front, waiting on you."  CS4 replied "I'll be there about fifteen minutes."

22.     Surveillance was established at 4409 West Washington.  At approximately 12:46 p.m., surveillance observed Williams arrive in a white Lexus sedan.  Surveillance observed Williams enter 4409 West Washington.  At approximately 1:10 p.m., surveillance observed Williams exit 4409 West Washington and stand on the front porch while talking on his cell phone.  Approximately ten minutes later, surveillance observed CS4 arrive and park his/her vehicle at approximately 4413 W. Washington.  Surveillance observed CS4 exit the vehicle and enter the yard of 4409 West Washington – where CS4 appeared to speak to Williams – and then both Williams and CS4 enter 4409 West Washington.

23.     Based on a debriefing of CS4 following the purchase of cocaine from Williams, CS4 stated he/she traveled to 4409 West Washington and pulled up in front of the house.  CS4 exited his/her vehicle and approached Williams, who was already standing on the porch of the residence.  CS4 informed agents that he/she and Williams conversed about parts for cars, then Williams advised CS4 he was selling some rims and asked if CS4 would like to see them.  CS4 responded affirmatively, and Williams advised CS4 to follow him inside.

24.     According to CS4, Williams and CS4 walked into the hallway of 4409 West Washington and at that time Williams stated, "Here go the thing right here," as Williams placed a plastic bag containing suspect cocaine on the window ledge.  CS4 related he/she took the suspect cocaine and handed Williams the $3,000 of U. S. currency.

25.     CS4 informed agents that he/she and Williams left the hallway and walked back to the front porch of the residence.  CS4 and Williams continued to engage in a conversation about the CS's vehicle, then Williams informed CS4, "They rolling through this stuff [selling Williams's supply of cocaine]. . . I got somebody rolling on the block [selling cocaine at a drug spot] for me, that's why I'm saying, I ain't doing it this way no more . . I'm doing it on the block, that's quicker and faster."  Williams also informed CS4 that "you'll see how that one rolls hard [the cocaine CS4 just purchased is good quality]. . . you can tear that out south to the 1600 block and back in no problem."  Williams also advised CS4 that the price for the cocaine was down a couple months ago, but it's higher now because Williams "is going through somebody else [another supplier]."

26.    At approximately 1:23 p.m., surveillance observed both CS4 and Williams exit 4409 West Washington and CS4 walk to his/her vehicle and depart the area. Surveillance agents maintained constant surveillance of CS4 until they met with CS4 at another location a few minutes later. CS4 met with agents and relinquished a clear plastic bag containing a white substance, suspected cocaine. A laboratory test of the substance indicated the presence of cocaine hydrochloride, and a net weight of approximately 124.8 grams. CS4 and his/her vehicle were searched again for guns, drugs, and money. CS4 had no contraband on his/her person or in his/her vehicle.

FURTHER AFFIANT SAYETH NOT

Connie Kuriata, Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me
This _____ 8 _____ day of July 2008

Honorable Jeffrey Cole
Magistrate Judge
United States District Court
Northern District Illinois